## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

PATRICIA CROWLEY                    :
                                    :
                Plaintiff,          :
                                    :
v.                                  :       No.  2:13-cv-00205-wks
                                    :
BURLINGTON ELECTRIC DEPARTMENT      :
and BARBARA GRIMES,                 :
                                    :
                Defendants.         :

### MEMORANDUM OPINION AND ORDER

Plaintiff Patricia Crowley brings this suit against her former employer, Defendant Burlington Electric Department ("BED"), and her direct supervisor Defendant Barbara Grimes, BED's General Manager, in connection with her termination from her positions as Executive Assistant and Clerk of the Board of Electric Commissioners.  Crowley brings claims for breach of contract and violations of the Vermont Fair Employment Practices Act ("VFEPA"), Vt. Stat. Ann. tit. 21, §§ 495–496a, public policy, and the Due Process Clause of the United States Constitution.[1]  She also seeks punitive damages.

Currently before the Court are cross motions for summary judgment.  Defendants have moved for summary judgment on all claims, ECF No. 25, and Crowley has moved for partial summary judgment on her due process claim (Count V), ECF No. 29.

---

[1] Crowley also brought claims under the Common Benefits Clause of the Vermont Constitution, Vt. Const. art. VII, and a breach of contract claim against Grimes, but withdrew the claims during a hearing on November 26, 2013.

Crowley has also moved to exclude two exhibits submitted by
Defendants in support of their summary judgment motion, ECF No.
28.  For the reasons described below, the Court **denies** Crowley's
motions to exclude and for partial summary judgment; **grants**
Defendants' summary judgment motion as to the public policy
claim; and **denies** Defendants' summary judgment motion for the
remaining claims.

**BACKGROUND[2]**

**I.  Crowley's Employment at BED**

Crowley began her career at BED as Board Clerk and
Executive Assistant to the General Manager, Defendant Grimes, in
1998.  As Board Clerk, Crowley prepared information packets for
the Board of Electric Commissioners, took minutes at monthly
meetings, and attended grievance hearings held before the Board.
As Executive Assistant, Crowley performed administrative duties
for Grimes.

At the outset of Crowley's employment at BED, Crowley and
Grimes had a positive working relationship.  However, this
relationship worsened over time.  During her employment at BED,
Crowley experienced problems with her left eye that required
extensive medical treatment over the course of several years.
As Crowley's eye troubles worsened, so did her relationship with
Grimes.  Crowley alleges that Grimes subjected her to repeated

---

[2] The following facts are undisputed, except where noted.

abuse and bullying with the knowledge that this harassment had a negative impact on her emotional state.  For example, Grimes called Crowley "wood eye," occasionally in front of BED management employees, and once left an Easter egg on Crowley's desk labeled "wood eye."  In autumn of 2010, Crowley went on leave to have her eye removed.  Crowley became increasingly emotionally fragile in the wake of her surgery and ultimately began to see a therapist to address the impact of her eye loss on her emotional health.

After Crowley returned from leave in January 2011, Crowley experienced difficulty arriving at work at her usual start time. Grimes gave Crowley permission to begin working from home for the first two hours of the day with the instruction to call her directly if she was not going to make it to the office; Crowley often failed to follow this instruction.  Despite Grimes's apparent flexibility with regard to Crowley's needs, the relationship between Crowley and Grimes worsened upon Crowley's return from leave.  Grimes grew increasingly impatient with Crowley and had limited tolerance for Crowley's fragile emotional state.  In August 2011, a dispute arose between Crowley and Grimes that culminated in a heated argument.  During the argument, Crowley took out her prosthetic eye and placed it on Grimes's desk.  Grimes responded, "wah, wah, wah," which Crowley interpreted as a derision of her continuing emotional

3

troubles.  When Crowley told Grimes that she could not understand what it was like to lose a body part, Grimes told Crowley that she had lost two knees and a hip and that Crowley's actions were inappropriate.[3]  After the argument, Grimes suggested that the two women contact Burlington's Employee Assistance Program ("EAP")[4] to discuss their working relationship; Crowley declined the invitation.

In October 2011, Crowley's emotional state became so fragile that she began 90 days of medical leave under the Family and Medical Leave Act ("FMLA") due to post-traumatic stress and depression.  Around the same time, Crowley contacted Susan Leonard at Human Resources to discuss Grimes's behavior toward her.  When Leonard advised Crowley that she could not guarantee confidentiality because the City might need to investigate Crowley's complaints, Crowley decided not to discuss the issue further with Leonard because she feared that reporting Grimes's behavior would put her job at risk.

Sometime after Crowley began her FMLA leave, Grimes revoked Crowley's work email access.  When Crowley objected, Grimes told her to focus on her recovery.  After this disagreement, Grimes

---

[3] The parties disagree about exactly what was said during the argument—Crowley claims Grimes used expletives in mocking her emotional state, Pl.'s Facts ¶ 38—but the tone of the conversation is undisputed.

[4] The Human Resources Department for the City of Burlington handles employment-related issues for BED.  In addition, the City maintains an Employee Assistance Program ("EAP") to aid employees with sensitive employment issues.

reviewed Crowley's email records.  The emails revealed a
romantic relationship between Crowley and a former BED employee,
Jon Loller, whom Grimes had dismissed.  Crowley had not informed
Grimes or BED about the relationship.  According to Defendants,
Grimes also found two other emails divulging confidential
details about Loller's termination to unauthorized individuals.
Defs.' Facts ¶ 56.  Crowley contends that she did not disclose
confidential information because she knew nothing other than
what Loller told her personally.  Pl.'s Facts ¶ 56.

Before returning from FMLA leave, Crowley underwent an
evaluation by Dr. William Nash in accordance with City and BED
procedures.  Based on the evaluation, Dr. Nash prepared a report
recommending that Crowley return to work on a part-time basis.
Dr. Nash's report was submitted directly to the City's Human
Resources Department.  Grimes reviewed Dr. Nash's report but
does not recall the exact date that she saw it.  Crowley
informed Grimes about the evaluation on January 11, 2012, but
did not provide details about the results of the examination at
that time.

On January 13, 2012, Grimes sent Crowley an email
scheduling a meeting for January 17, 2012, the day Crowley's
FMLA leave expired.  Grimes did not indicate the purpose of the
meeting in the email; Crowley assumed that Grimes intended to
discuss whether Crowley's leave would be extended or if she

would return to work part time.  Crowley intended to request
further leave pursuant to BED and City policy.

Instead, Grimes began the meeting by telling Crowley that
she needed to resign or else she would be fired.  Grimes asked
Crowley about her romantic relationship with the former BED
employee Loller.  When Crowley denied the relationship, Grimes
produced Crowley's emails documenting the relationship.  She
also accused Crowley of inappropriately sharing information
about Loller's termination and stated that she could no longer
trust Crowley with confidential information.[5]  Grimes then
presented Crowley with the option of termination or resignation
in exchange for a severance package.  When Crowley objected to
signing the resignation letter, Grimes told her to say she was
coerced and threw a pen across the table at her.  Pl.'s Facts ¶
78.  Crowley ultimately signed the resignation letter.  Crowley
contends that Grimes had made a final decision to fire her
before their meeting and that "nothing was going to change her
mind," Pl.'s Add'l Facts ¶ 14,  while Grimes states that there
had been a small chance that she would have changed her mind if
Crowley had admitted to her inappropriate behavior.  Defs.'
Facts ¶ 74.

---

[5] The parties dispute whether there were additional grounds for Crowley's
termination, and whether they were communicated to her and when.

The day after the meeting, Crowley retained counsel and
sought to rescind her resignation and release of claims and to
be reinstated to her former position.  Crowley's attorney
submitted a letter to the Burlington City Attorney to that
effect, but never appealed Crowley's dismissal pursuant to BED's
personnel policies (described further below).  BED, through
counsel, informed Crowley that her employment had ended.

## II.  BED's Personnel Policy Manual

BED's Personnel Policy Manual ("the Manual") describes the
personnel policies applicable to all employees, including
termination and appeal procedures.  In 2009, Crowley signed a
document acknowledging her receipt of the most recent version of
the Manual and her responsibility to comply with its policies.
She kept a copy of the Manual in her office.

The BED Manual provides that after completing a
probationary period, an employee "may not be discharged without
due process."  Defs.' Mot. Summ. J. Ex. D ("Manual") 64 § 9.4,
ECF No. 25-6.  For an involuntary separation, BED's Manual
requires that an employee be provided with an explanation of the
grounds for discharge and an opportunity to respond during a
pre-termination hearing before the employee's Department Head or
designee.  *Id.*  If the Department Head determines that
termination is necessary, then he or she provides the employee
with written notice of "the effective date of the discharge; the

reason(s) for the discharge; [and] notification of the employee's right to request a hearing for review of the discharge action." *Id.* The Department Head may then discharge the employee immediately. *Id.* Section 9.5 of the Manual allows employees to request a review hearing after notice of dismissal. *Id.* at 65 § 9.5. The Manual requires no notification or review for a voluntary separation. *Id.* at 63 § 9.3.

## DISCUSSION

### I.  Motion to Exclude

Crowley moves to exclude Defendants' Exhibits H and I—two emails Defendants submitted in support of their contention that Crowley disseminated confidential information to unauthorized individuals, *see* Defs.' Mot. Summ. J. Ex.'s H, I—because Defendants produced the exhibits for the first time in support of their summary judgment motion rather than in discovery. Rule 26 of the Federal Rules of Civil Procedure requires disclosure during discovery of any documents in a party's possession that support any claims or defenses, which must be supplemented in a timely manner as necessary. Fed. R. Civ. P. 26(a), (e). A party that fails to disclose information required by the rule cannot use the information to support a motion unless the failure to disclose was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). Defendants have not shown that the failure to disclose was substantially justified. They provide

no explanation of why they did not produce the exhibits prior to filing their motion. However, the failure to disclose is harmless. Crowley wrote the emails, she has not claimed that she was unaware of their existence or contents, and the facts supported by the exhibits are undisputed.  The motion to exclude is therefore denied.

## II.  Motions for Summary Judgment

A motion for summary judgment must be granted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).  In considering summary judgment, the Court construes the evidence "in the light most favorable to the nonmoving party, and draw[s] all inferences and resolv[es] all ambiguities in favor of the nonmoving party." *Doro v. Sheet Metal Workers' Int'l Ass'n*, 498 F.3d 152, 158 (2d Cir. 2007).  "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn

against the party whose motion is under consideration." *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011).[6]

### A. Breach of Contract (Count I)

Count I of the complaint alleges that BED breached Crowley's employment contract by failing to follow BED's required procedures for involuntary separation pursuant to the Personnel Policy Manual.  The parties do not dispute that the Manual created a valid employment contract between Crowley and BED, nor do they dispute that BED failed to follow the involuntary termination procedures it requires.  BED nonetheless argues that Crowley's breach of contract claim is barred because Crowley did not follow the grievance procedures pursuant to the Personnel Policy Manual.  When an employment agreement governs the procedures for appealing dismissal, the proper method to challenge the validity of dismissal is via the procedures provided in the agreement.  *Rich v. Montpelier Supervisory Dist.*, 709 A.2d 501, 503 (Vt. 1998).[7]  An employee "must exhaust

---

[6] As a preliminary issue, Defendants claim that Crowley failed to provide a statement of disputed material facts properly supported by the record, as required by Local Rules 56(b) and (c), and that as a result all material facts in Defendants' Statement of Undisputed Material Facts should be deemed admitted.  Crowley filed a Response to Defendants' Statement of Undisputed Facts, ECF No. 27-1, which distinguishes between disputed and undisputed facts and is supported by citations to the record.  Crowley's response is in substantial compliance with the Local Rules; therefore, Defendants' asserted facts will not be deemed admitted.

[7] This Court exercises subject matter jurisdiction over the claims in this case through 28 U.S.C. §§ 1331 and 1367(a).  When exercising supplemental jurisdiction over state claims, federal courts must apply substantive state law.  *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

the remedies available under that agreement before [she] may maintain a suit against [her] employer." *Id.* (internal quotation marks omitted). Thus, BED has moved for summary judgment dismissing Count I on the grounds that Crowley's contract provides a remedy that Crowley failed to pursue.

While Crowley did not follow BED's procedures to appeal her termination, an exception to the requirement to exhaust administrative procedures may exist where "an employer fails or refuses to perform actions required of it under contract and thus prevents the employee from complying therewith." *Furno v. Pignona*, 522 A.2d 746, 749 (Vt. 1986). In *Furno*, the city manager of St. Albans failed to provide the plaintiff, a recently terminated employee, with written notice or a hearing as required by the city's Rules and Regulations for removal, claiming that the plaintiff's termination was not subject to these requirements because the plaintiff had been appointed for only a one-year term. *Id.* at 748. The court found that the exception to the exhaustion doctrine applied because the city breached the contract first by refusing to provide notice and a hearing as required. *Id.* at 749-50.

As in *Furno*, Crowley did not receive written notice of the grounds for her termination—which provides the information upon which to base an appeal—nor of her subsequent appeal rights, which prevented her from complying with proper procedures. *Id.*

11

at 750.  *Furno* differs from this case, however, because there
the employer actively prevented the employee from pursuing an
appeal by denying that he was entitled to the administrative
remedies provided by the personnel policy.  *Id.* at 748.  Here,
BED never denied that Crowley's employment was governed by the
Manual.  However, a jury could still find that Grimes's coercive
and aggressive methods of obtaining Crowley's "resignation" may
have led Crowley to believe that the normal procedures to appeal
a dismissal were unavailable to her, thereby essentially
preventing her from complying with the Manual's policies for
appealing a termination.  Because factual questions remain
regarding whether Crowley was subject to the requirement to
exhaust administrative remedies, Defendants' summary judgment
motion as to Count I is denied.[8]

### B. Unlawful Employment Practices (Counts II and III)

In Counts II and III, Crowley asserts claims against BED
and Grimes for unlawful employment practices.  Am. Compl. 5–7,
ECF No. 23.  Crowley brings two claims pursuant to the Vermont
Fair Employment Practices Act[9] ("VFEPA"), Vt. Stat. Ann. tit. 21,
§ 495–496a: an adverse employment action based on disability

---

[8] Crowley has argued in her Opposition that she is entitled to summary
judgment due to the lack of pre- and post-termination notice and BED's
failure to investigate the termination process.  Pl.'s Opp'n 12–13.  Apart
from the procedural irregularity of failing to raise this issue through a
motion, the Court notes that disputed material facts preclude deciding this
issue on summary judgment.

[9] The parties agree that Crowley is covered by the VFEPA as a qualified
disabled individual.

discrimination and a retaliation claim.  She also alleges a
public policy violation under Vermont common law.  Defendants
seek summary judgment dismissing all claims in both Counts.

### i. Disability Discrimination

Crowley first brings a claim under the VFEPA for wrongful
termination based on disability discrimination.  Am. Compl. ¶¶
41-42, 48.  Under the VFEPA, it is unlawful for any employer to
discriminate against a qualified disabled individual.  Vt. Stat.
Ann. tit. 21, § 495(a)(1).  A claim that the plaintiff suffered
an adverse employment action based on his or her disability is
subject to the *McDonnell Douglas* burden-shifting analysis.
*McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).[10]
According to that standard, "[a] plaintiff must establish a
*prima facie* case; the employer must offer through the
introduction of admissible evidence a legitimate non-
discriminatory reason for the discharge; and the plaintiff must
then produce evidence and carry the burden of persuasion that
the proffered reason is a pretext."  *McBride v. BIC Consumer
Prod. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (internal
quotations omitted).

For the purposes of this motion, Defendants concede that
Crowley can establish a *prima facie* case.  Defs.' Mot. Summ. J.

---

[10] Because the disability discrimination provisions of the VFEPA are patterned
after the federal Rehabilitation Act, the Court looks to federal case law to
analyze VFEPA claims.  *State of Vermont v. G.S. Blodgett Co.*, 656 A.2d 984,
988 (Vt. 1995).

13, ECF No. 25.  The burden thus shifts to Defendants to offer admissible evidence showing a legitimate, nondiscriminatory reason for the adverse employment action.  *McBride*, 583 F.3d at 98.  Defendants offer several nondiscriminatory reasons for Crowley's termination.  Defendants claim that Crowley inappropriately disclosed confidential information via email regarding the termination of a BED employee, thereby breaching confidentiality and misusing BED resources.  Defs.' Facts ¶¶ 56–59, 76.  Defendants also cite Crowley's alleged romantic relationship with the same former BED employee and Crowley's failure to disclose the relationship despite the fact that she may have had access to documents relating to his termination (creating a potential conflict of interest).  *Id.* ¶¶ 61–64. Finally, Defendants claim that Crowley was consistently tardy and often failed to follow her supervisor's instructions.  *Id.* ¶¶ 33, 45–46.  For purposes of summary judgment, the Court finds that Defendants' reasons constitute legitimate nondiscriminatory bases for Crowley's termination.

In their motion for summary judgment, Defendants argue that Crowley has failed to demonstrate pretext.  However, there are three factors present in the record that provide evidence of pretext.  First, Defendants did not present all the reasons that they now allege were the grounds for Crowley's termination at the time she was fired.  Pl.'s Facts ¶ 76.  Second, Grimes

14

displayed a great deal of animosity toward Crowley: for example, she called Crowley "wood eye" numerous times and one time left an Easter egg labeled "wood eye" on Crowley's desk, *id.* ¶ 27, Pl.'s Add'l Facts ¶ 1; she mocked Crowley's emotional distress, Pl.'s Add'l Facts ¶¶ 3-4; she told Crowley that she had lost patience with her, *id.* ¶ 5; and she threw a pen at Crowley when asking her to sign the resignation letter, *id.* ¶ 24.  Third, Grimes made the decision to terminate Crowley in early January, which implies that she waited to fire Crowley until after Dr. Nash filed his report notifying the City of Crowley's intent to pursue additional leave.  Pl.'s Opp'n 18-19.  Grimes admitted that she "may have" been aware that the report recommended that Crowley return part time.  Grimes Dep. 54:18, ECF No. 25-8. These three factors introduce sufficient factual questions of pretext to require that this case be heard by a jury; therefore, the Court denies Defendants' summary judgment motion as to the VFEPA discrimination claim.[11]

---

[11] Crowley requested that the Court analyze this claim under a *Price Waterhouse* mixed-motives analysis, but because her claim survives summary judgment under the stricter standards of *McDonnell Douglas*, mixed-motives analysis is unnecessary at this juncture.  In light of the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009), which found that a mixed-motives analysis never applies to ADEA claims, some Circuits have declined to apply *Price Waterhouse* to cases analyzed under the similarly-structured ADA.  *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) (determining that ADA requires a showing of but-for causation because of the absence of a cross-reference to Title VII's mixed-motives liability language); *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) (same).  The Second Circuit has yet to provide guidance on the topic, but it is unnecessary to address the issue today.  If this claim reaches a jury, the question will be dealt with through jury instructions.

### ii. Retaliation

In Count III, Crowley claims that her termination violated the VFEPA because Defendants retaliated against a member of a protected class for engaging in a protected activity.  Am. Compl. ¶¶ 51–55.  Vermont courts analyze retaliatory discrimination claims using the same *McDonnell Douglas* burden-shifting analysis described above.  *See Murray v. St. Michael's College,* 667 A.2d 294, 299 (Vt. 1995) (setting out the three steps of the burden shift).  To establish a *prima facie* case on her retaliation claim, Crowley must show that "(1) [she] was engaged in a protected activity, (2) [her] employer was aware of that activity, (3) [she] suffered adverse employment decisions, and (4) there was a causal connection between the protected activity and the adverse employment decision."  *Id.*  The plaintiff's burden to survive summary judgment at the *prima facie* stage is *de minimis*.  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 94 (2d Cir. 2001).

Crowley has plainly established the first three elements of a *prima facie* case: (1) Crowley took leave protected by the FMLA and sought further leave; (2) BED was aware that she did so; and (3) Crowley's employment ended upon her return from FMLA leave and after she requested to extend it.  Because the standard for meeting the burden of a *prima facie* case is *de minimis*, Crowley only needs to present evidence that a causal nexus existed to

satisfy the fourth element.  Timing alone can be enough to
establish a *prima facie* case of a causal connection.  *Murray*,
667 A.2d at 300.  Because Crowley was terminated immediately
upon her return from FMLA leave, while she intended to seek
further full- or part-time leave, and without any discipline
prior to the time she filed for leave, a causal connection may
be inferred, thereby establishing a *prima facie* case.  *Cf.*
*Slattery*, 248 F.3d at 95 (finding no causal nexus based on
timing because gradual adverse job actions began well before
plaintiff engaged in protected activity).

Because Crowley has established a *prima facie* case with
respect to her retaliation claim, the Court proceeds with the
same *McDonnell Douglas* analysis applied to the discrimination
claims.  As outlined above, Defendants have provided legitimate,
non-retaliatory reasons for Crowley's termination; however, as
also noted above, material facts remain in dispute regarding
Crowley's pretext arguments.  Summary judgment is therefore also
denied as to Crowley's retaliation claims.

### iii. Public Policy Violation

Crowley also claims that BED and Grimes violated a public
policy against dismissing employees who cannot work due to a
temporary disability.  Pl. Opp'n 20.  Because such public policy
claims cannot be brought against coworkers or supervisors in
their individual capacities, but only against "companies and

17

other organizations," *Wyatt v. City of Barre/Barre City Fire Dep't*, No. 2:11-CV-00297, 2012 WL 1435708, at *3-4 (D. Vt. April 25, 2012), any public policy claim against Grimes must be dismissed.

The public policy claim against BED must also be dismissed because the claim is duplicative of Crowley's discrimination claim. *See Boule v. Pike Industries*, Inc., No. 5:12-CV-7, 2013 WL 711937, at *23-24 (D. Vt. Feb. 27, 2013) (finding public policy claim to be preempted by statutory remedy where public policy claim wholly duplicative of statutory claim); *Fellows v. Earth Const.*, Inc., 794 F. Supp. 531, 538 (D. Vt. 1992) (finding common law action precluded by an adequate statutory remedy for sex discrimination).  Because the availability of a remedy for discrimination under the VFEPA precludes Crowley's wrongful discharge public policy claim, Defendants' motion for summary judgment as to the public policy claims is granted.

### C. Due Process (Count V)

In her final surviving claim, Crowley alleges that Grimes violated her Fourteenth Amendment due process rights by depriving her of employment without notice or adequate opportunity to be heard.  Am. Compl. ¶¶ 66-77.  In addressing a claim for a violation of procedural due process rights, the Court must determine whether the plaintiff "was deprived of a protected interest, and, if so, what process was [her] due."

18

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).  "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause."  *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010).  At BED, once an employee completes the mandatory probationary period, "the employee may not be discharged without due process."  Manual 64 § 9.4.  Defendants do not contest that Crowley has a protected interest.  However, Defendants contend that Crowley was afforded due process and that Grimes is entitled to qualified immunity in any event.  The parties have cross-filed for summary judgment with respect to Count V; these motions will be addressed individually below.

### i. Defendants' Motion

Defendants argue in their motion that Count V should be dismissed because Crowley received due process.  It is well established that a "tenured public employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

There are several outstanding factual questions that preclude judgment as a matter of law as to Count V.  First, it is unclear from the record whether Crowley was provided with

19

adequate notice.  Due process does not necessarily require prior notice, but the particular circumstances must be considered to determine whether notice was sufficient.  *See Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 2986) (finding lack of advanced notice not a *per se* due process violation—notice sufficient if appraises party of charges and evidence against him and if timely under the circumstances); *Brasslett v. Cota*, 761 F.2d 827, 836 (1st Cir. 1985) (finding notice sufficient when plaintiff orally notified of allegations during a one hour conference with his manager).  In advance of Crowley's termination, Grimes emailed Crowley stating that she would need to meet with Crowley without explaining what the meeting would entail.  At the meeting, Grimes told Crowley two of the reasons Defendants cite as the grounds for her termination—the undisclosed relationship with the former BED employee and Crowley's release of confidential information.  Grimes did not, however, explain any of the other grounds for termination currently cited by the Defendants—misuse of company property, tardiness, and failure to follow instructions.  If these charges truly formed the basis for Crowley's termination, then Grimes gave Crowley insufficient notice of the charges against her.

Factual questions also remain as to whether Crowley was provided with the opportunity to present her side of the story. Due process requires that the employee have the opportunity to

present reasons why the proposed action should not be taken.
*Loudermill,* 470 U.S. at 546.   Grimes, according to her own
testimony, merely presented Crowley with the Loller emails
before allowing her to choose to resign or be fired.   Crowley
denied her involvement with Loller, but otherwise the record
does not suggest that she presented her side of the story.
Grimes Dep. 73:2-74:19.   Moreover, Grimes may have decided to
fire Crowley before the meeting even began; she described the
colloquy as "a meeting to discuss [Crowley] not continuing work
at BED."   Grimes Dep. 73:3-6.   If Grimes was unwilling to hear
Crowley out, her attitude could have impeded Crowley's
opportunity to be heard.   Thus, based on these facts, a
reasonable jury could find that Crowley was not permitted an
adequate opportunity to respond to the charges.   Defendants have
failed to establish as a matter of law that Crowley received
adequate notice and an opportunity to be heard; therefore,
Defendants' motion for summary judgment cannot be granted on
this basis.

      Defendants argue in the alternative that this claim should
be dismissed on qualified immunity grounds.   "Qualified immunity
protects federal and state officials from money damages and
'unnecessary and burdensome discovery or trial proceedings.'"
*Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (quoting
*Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).   A claim may

21

be dismissed at the summary judgment stage on qualified immunity grounds only if the officials have demonstrated that "no rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080, (2011)).

An official violates clearly established law when "'the contours of a right are sufficiently clear that every reasonable official would have understood what [she] is doing violates that right.'" *Id.* at 220 (quoting *al-Kidd*, 131 S.Ct. at 2083). Grimes had previously been sued over similar due process violations, so she was aware of the clearly established rights of employees. *See Quinn v. Grimes*, 861 A.2d 1108, 1114-16, 2004 VT 89 ¶¶ 21-29 (reviewing *Loudermill* requirements for pre-termination hearings and remanding to determine whether meeting between Grimes and plaintiff allowed sufficient opportunity to be heard). Therefore, if Grimes failed to provide a full accounting of the reasons for Crowley's termination or a full opportunity to be heard, then she violated Crowley's due process rights. Because factual questions remain as to whether Crowley's pre-termination procedures were adequate, summary judgment cannot be granted on qualified immunity grounds.

**ii. Crowley's Motion**

Crowley seeks summary judgment as to Count V based on the contention that her deprivation of due process can be established as a matter of law.  However, when viewing the facts in the light most favorable to Defendants, the record does not support such a finding.  First, a reasonable jury could find that Crowley was provided with sufficient notice.  At the pre-termination meeting, Grimes provided Crowley with reasons for her termination.  Grimes presented Crowley with the Loller emails and described the conflict of interest implicated when Crowley was "privy to all of the confidential information leading up to [Loller's] termination."  Grimes Dep. 73:18-23. Grimes also discussed the problem created by Crowley's unauthorized release of confidential information.  Crowley Dep. 96:15-97:1.  Grimes also contends that she may have changed her mind about ending Crowley's employment had she admitted to the above charges.  Defs.' Facts ¶ 74.  If Crowley could have retained her employment by admitting to the charges presented, then notifying her of only those charges could reasonably be found to fulfill due process requirements.  *See Loudermill*, 470 U.S. at 544 (explaining that the purpose of a pre-termination hearing is to give the employee an opportunity to present arguments that may prevent her discharge).

Even if Grimes provided Crowley with adequate notice of the charges at the hearing, Crowley may have been entitled to prior

23

notice.  Crowley had not been subject to prior discipline concerning any of the charges and she had no warning that the charges were likely to be brought, which suggests that Grimes should have provided prior notice.  Because the charges were uncomplicated, however, a jury could still find that Grimes gave adequate notice by presenting the charges at the meeting.

Due process also requires that Crowley be able to contest the grounds for her termination, *Loudermill*, 470 U.S. at 546; however, the record indicates that Grimes gave Crowley an opportunity to respond to the charges.  Grimes Dep. 74:1-19. While it is possible that Grimes entered the meeting intending to end Crowley's employment, Grimes stated that she could have been persuaded to retain Crowley if she had admitted to her inappropriate conduct.  Defs.' Facts ¶ 74.  Furthermore, although *Loudermill* describes the pre-termination hearing as possibly "the only meaningful opportunity to invoke the discretion of the decisionmaker" prior to termination, 470 U.S. at 543, a neutral adjudicator is not required in a pre-termination hearing as long as a full adversarial post-deprivation hearing is provided.  *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001).[12]  Thus, a jury could also find that

---

[12] A pre-termination opportunity to respond combined with post-termination procedures providing a full hearing satisfies due process.  *Loudermill*, 470 U.S. at 546-48.  BED provides procedures for requesting a post-termination hearing before the Institutions and Human Resources Policy Committee.  Manual § 9.5.  Crowley failed to use these procedures.  No clear precedent exists to

Crowley had a sufficient opportunity to be heard.  The Court therefore denies Crowley's motion for partial summary judgment because Crowley cannot demonstrate as a matter of law that she was deprived of her due process rights.

## CONCLUSION

For the aforementioned reasons, the Court DENIES Crowley's motions to exclude and for partial summary judgment; GRANTS Defendants' motion for summary judgment for the public policy claims; and DENIES Defendants' summary judgment motion for all other claims.

Dated at Burlington, in the District of Vermont, this 22nd day of January, 2014.

/s/William K. Sessions III
William K.  Sessions III
U.S.  District Court Judge

---

determine whether constitutionally adequate but unused post-termination procedures may cure an inadequate pre-termination process.  However, because a factual dispute remains about the adequacy of the pre-termination procedures provided, the Court need not address this issue at this time.